Neil **CONNELLY**, Petitioner,

v.

**J. D. PARKINSON, Warden of The State
of South Dakota Penitentiary,
Respondent.**

**No. Civ. 75–4037.**

United States District Court,
D. South Dakota, S. D.

Dec. 17, 1975.

———◆———

Arlie J. Brende, of Braithwaite &
Cadwell, Sioux Falls, S. D., for petitioner.

Peter H. Lieberman, Asst. Atty. Gen.,
Pierre, S. D., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Petitioner is currently incarcerated at
the South Dakota State Penitentiary and
alleges, pursuant to 28 U.S.C. Sec. 2254,
that his custody is in violation of the
Constitution of the United States. Oral
arguments have been made and briefs
submitted by counsel. State post-con-
viction remedies have been exhausted
except for one issue which will be men-
tioned below.

Petitioner pleaded guilty in Circuit
Court to obtaining money by false pre-
tense in violation of SDCL (1967) 22–
41–7. His guilty plea to writing a $15
no account check was accepted on March
19, 1974. SDCL (1967) 22–41–7 pro-
vides for a punishment of not less than
one year nor more than ten years. The
record of the state court proceedings
indicates that Petitioner was erroneous-
ly advised by the court that the maxi-
mum sentence was three years. Al-
though Petitioner was represented by

counsel at his arraignment and sentencing, his counsel failed to correct the court on this matter. Nonetheless, Petitioner received neither a ten year nor a three year sentence, but because it was his first felony, Connelly was placed on probation for a period of two years.

While Petitioner was on probation, the probation officer conducted a warrantless search of Petitioner's automobile and discovered 31 cellophane bags containing marijuana. As a result a charge of possession of marijuana with intent to distribute was filed against Connelly. With that charge still pending in Tripp County, the probation officer filed a probation violation report. At the probation revocation hearing, evidence obtained through the warrantless search was admitted over the objections of Petitioner. At the conclusion of the hearing, Connelly's probation was revoked and he was sentenced to three years.

Essentially two issues are raised by the petition for habeas corpus:

1. That the Petitioner was erroneously advised that the maximum sentence for violation of SDCL (1967) 22–41–7 was three years when it was in fact ten. Thus no plea of guilty could be intelligently or voluntarily made in accordance with Boykin v. Alabama, 395 U. S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1968). Associated with this argument is the claim that the South Dakota legislature in 1973 enacted a special statute, SDCL (1967) 22–41–1.2, which provides that anyone who writes a no account check and is convicted of the same, shall be imprisoned for a period not to exceed three years. In so legislating, Petitioner argues that it was the intent of the legislature that individuals such as the Petitioner, who write no account checks, be charged under the later statute rather than the former.

2. That evidence which was the fruit of an illegal search should not have been admitted at Petitioner's probation revocation hearing.

The first contention posited by Connelly is without merit. The Latin phrase, *injuria absque damno,* best describes Petitioner's complaint. The very question of being misadvised as to the maximum sentence for an offense was addressed by the Fifth Circuit in *Johnson v. Wainwright,* 456 F.2d 1200 (5th Cir. 1972). In that case the defendant was incorrectly informed that the maximum sentence he could receive was fifteen years when in fact it was twenty years. Johnson pleaded guilty and received a fifteen year sentence. The Court noted:

Here Johnson was incorrectly advised that the maximum sentence was less than that authorized by law. But his sentence was equal to that which he had been told and less than the statutory maximum. Under such circumstances we think the *Woodall,* [*United States v. Woodall,* 438 F.2d 1317 (5th Cir. 1970) (*en banc*) cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971)], rationale is controlling. The likelihood that the knowledge that the maximum sentence was twenty years instead of fifteen years would have caused Johnson to change his plea is so improbable as to be without legal significance.

*Johnson, supra,* at 1201. The above rationale is even more persuasive in this case since Connelly received neither a ten year nor a three year sentence but was placed on probation. Petitioner was in no way prejudiced by the misstatement. *See also Murray v. United States,* 419 F.2d 1076 (10th Cir. 1969).

Likewise, Connelly's assertion that the "intent" of the legislature was to have his type of offense charged under SDCL (1967) 22–41–1.2 rather than SDCL (1967) 22–41–7 has no basis in fact. It is a fundamental tenet of statutory construction that criminal statutes are not repealed by implication. SDCL

(1967) 22–41–7 has certainly never been expressly repealed and "legislative intent" being a rather elusive target, the question of repeal by implication is best left to the State Supreme Court. Further, as the State of South Dakota pointed out in its brief, Petitioner failed to raise this issue in his petition for post-conviction relief, thus failing to exhaust his available state remedies (as to this issue.)

Petitioner's second contention does pose a more difficult question. Whether the exclusionary rule is applicable to a probation revocation proceeding has been the subject of considerable discussion. In asking the Court to hold that it does so apply, Petitioner has overlooked a very significant point: Whether the search without a warrant of Connelly's automobile by the probation officer was illegal. If it was not, then obviously the exclusionary rule would not come into play at all.

In determining the legality of warrantless searches conducted by probation officers, reference must be made to the purpose of the probation system. Essentially, the probation system attempts to afford an individual the opportunity to remain a contributing member of society outside the prison walls. *See generally Burns v. United States*, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932). In return, an individual who benefits from this privilege is expected to adhere to certain conditions. Those conditions normally appear in the agreement which is explained to and signed by the probationer. Additionally, in South Dakota the sentencing court may add certain special limitations to the order deferring or suspending the imposition of sentence. *See* SDCL (1967) 23–57–1. It appears from the testimony of the probation officer that no waiver or modification of the Petitioner's Fourth Amendment rights appeared on the Probation Agreement which Connelly signed. Nor did the order of the court contain any provision subjecting Connelly to warrantless searches. Absent any expressed waiver or order, the issue becomes one of determining the standard by which searches of probationers by their probation officer are to be measured.

The court notes the growing recognition by the Supreme Court of the rights of probationers and parolees. In *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), the Court held that a probationer is entitled to be represented by appointed counsel at a combined revocation and sentencing hearing. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), required that a parolee be accorded due process. That holding was extended to probationers in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1972), when the Court remarked:

> Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one.

*Gagnon, supra*, at 782, 93 S.Ct. at 1759. Obviously, probationers do not, *ipso facto*, forfeit all constitutional protection. Rather, the difficulty lies in drawing the line.

A very recent *en banc* decision of the Ninth Circuit discusses the validity of a warrantless search by a parole officer accompanied by two local police officers. The Court noted the distinction between the restricted status of a parolee from that on an ordinary citizen and stated:

> We think that one of these restrictions, necessary to the effective operation of the parole system, is that the parolee and his home are subject to search by the parole officer when the officer reasonably believes that such search is necessary in the performance of his duties. The parole officer ought to know more about the parolee than anyone else but his family. He is therefore in a better position than anyone else to decide whether a search is necessary. His decision may be based upon specific facts, though they be less than suffi-

cient to sustain a finding of probable cause. It may even be based on a "hunch," arising from what he has learned or observed about the behavior and attitude of the parolee . . .

*Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir. 1975) *(en banc).* The Court went on to hold that it was not appropriate to require a parole officer to obtain a warrant. In light of the parallel status of probationers and parolees, the same relaxed standards applied to a parole officer in *Latta* would seem appropriate for probation officers. *United States v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir. 1975) *(en banc).* It also bears noting that *Latta* dealt with a search of a home whereas the instant case concerns the search of Connelly's automobile. Recently the Supreme Court reiterated that "(g)enerally, less stringent warrant requirements have been applied to vehicles." *Cardwell v. Lewis,* 417 U.S. 583, 589–90, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974).

 Even if this Court were to hold probation officers to the traditional Fourth Amendment standard of probable cause, a warrantless search is always permissible when voluntary consent has been given. *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 26 L.Ed. 2d 409 (1970), *Katz v. United States,* 389 U.S. 347, 358, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967). The record of the revocation hearing reveals that Connelly handed his keys over to the probation officer. In fact the probation officer testified that when he had difficulty getting the trunk open, Connelly stepped over, took the keys and opened the trunk himself. Transcript of the Revocation Hearing at p. 32. Viewing the totality of the circumstances as required by *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Petitioner voluntarily consented to the search of his automobile.

Finally, assuming *arguendo,* that Connelly did not consent to the search, and that the probation officer's search was illegal simply for lack of a warrant, the fact remains that no court which has considered extending the exclusionary rule to probation revocation hearings has apparently ever done so. *United States v. Winsett,* 518 F.2d 51 (9th Cir. 1975); *United States v. Brown,* 488 F.2d 94 (5th Cir. 1973); *United States v. Hill,* 447 F.2d 817 (7th Cir. 1971); *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161 (2nd Cir. 1970); *United States ex rel. Lombardino v. Heyd,* 318 F.Supp. 648 (E.D.La.1970), aff'd 438 F.2d 1027 (5th Cir. 1971) (per curiam), cert. denied, 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1971); *State v. Schlosser,* 202 N.W.2d 136 (N.D.1972).

This memorandum decision constitutes the findings of fact and conclusions of law. The petition for a writ of habeas corpus is hereby denied.

So ordered.